| | |
|---|---|
| CHELSEA ELAINE HAUGLI,     ) | |
|     Plaintiff,     ) | |
|     ) | |
| v.     ) | CAUSE NO.: 1:17-CV-377-PRC |
|     ) | |
| NANCY A. BERRYHILL,     ) | |
| Acting Commissioner of the     ) | |
| Social Security Administration,     ) | |
|     Defendant.     ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Chelsea Elaine Haugli on August 30, 2017, and a Social Security Opening Brief of Plaintiff [DE 17], filed on February 6, 2018. Plaintiff requests that the December 8, 2016 decision of the Administrative Law Judge denying her claim for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings. On March 16, 2018, the Commissioner filed a response, and Plaintiff filed a reply on April 2, 2018. For the following reasons, the Court denies Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On July 12, 2014, and July 14, 2014, Plaintiff filed applications for disability insurance benefits and supplemental security income, respectively, alleging disability beginning May 11, 2014. The applications were denied initially and on reconsideration. Plaintiff requested a hearing, and, on September 15, 2016, Administrative Law Judge Terry Miller ("ALJ") held a hearing by video conference. In attendance at the hearing were Plaintiff, Plaintiff's mother, Plaintiff's attorney, and an impartial vocational expert. On December 8, 2016, the ALJ issued an unfavorable decision, making the following findings:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

2.     The claimant has not engaged in substantial gainful activity since May 11, 2014, the alleged onset date.

3.     The claimant has the following severe impairments: history of rheumatoid arthritis (RA) (Exhibits 17F, 24F, 25F, 31F, 39F); mild to moderate degenerative joint disease of the left knee (Exhibit 27F); history of iron deficiency anemia (Exhibits 15F, 18F, 25F, 39F); mild to moderate obesity (Exhibit 31F); Asperger's disorder/autism spectrum disorder (Exhibits 26F, 35F, 37F, 38F, 40F); borderline intellectual functioning to low average range IQ/learning disorder (Exhibits 20F; 26F; 35F; 40F).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform "light" work as defined in 20 CFR 404.1567(b) and 416.967(b) (i.e. lifting, carrying, pushing, and pulling up to 20 pounds occasionally and 10 pounds frequently; sitting at least up to six out of eight hours in an eight hour workday; and standing/walking, in combination, at least six out of eight hours in an eight hour workday). However, the claimant would have additional work-related limitations as follows: Additional limitations include a need for an option to sit/stand, which allows for the following- The opportunity to alternate between sitting and standing up to every 30 minutes, if needed, without the positional change rendering the individual off task. The claimant is further limited to only occasional climbing of ramps/stairs, balancing, stooping, kneeling, crouching and crawling, and never climbing ladders, ropes, or scaffolds. Other physical limitations include[] only frequent bilateral handling and fingering with no forceful grasping/gripping of the hands, and the need to avoid concentrated exposure to extreme cold, heat and humidity such that work should be in an indoor temperature controlled environment. Mentally, the claimant cannot have no[sic] sudden or unpredictable workplace changes in terms of use of work tools, work processes, or work settings, and if there are work place changes, introduction of these would should [sic] be gradual. In addition, the work activity cannot involve requirements to satisfy production quotas or involve assembly line pace work.

6.     The claimant is unable to perform any past relevant work.

7.     The claimant was born [in 1988] and was 25 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is"not disabled," whether or not the claimant has transferable job skills.

10.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.      The claimant has not been under a disability, as defined in the Social Security Act, from May 11, 2014, through the date of this decision.

(AR 28-40).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of

evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the

claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's residual functional capacity (RFC). The RFC "is an administrative assessment of what work-related activities an individual can perform despite [her] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## BACKGROUND

Plaintiff was twenty-five years old as of her alleged onset date. (AR 110). She graduated high school in special education classes and attended college for one year before she stopped due to problems with math classes. (AR 260, 511, 661). Plaintiff lives with her parents, and, three weeks prior to the hearing in this case, Plaintiff returned to college classes to obtain a public librarian certificate. (AR 56, 63, 75, 79). Previously, Plaintiff worked as a door greeter at Wal-Mart for thirty-six hours a week from May 2009 to May 11, 2014, when she stopped working due to her rheumatoid arthritis. (AR 62, 296-97). Since her onset date of May 11, 2014, Plaintiff has not worked, but she volunteers at a local library for two to three hours twice a week. (AR 59, 296).

On March 10, 2010, Plaintiff's therapist wrote that Plaintiff "has a strong history of Autism." (AR 429). Plaintiff's mother reported that Plaintiff's childhood milestones "were so slow that they all stood out" and she struggled to socialize as early as the second grade. (AR 510-11). In a January 29, 2011 Psychological Report, it was noted that Plaintiff has no difficulty communicating "normal" information with her family but that she cannot explain her feelings or emotions and is easily upset by criticism. (AR 519). At that time, Plaintiff's diagnoses were Asperger's Disorder (by history), borderline intellectual functioning, and juvenile rheumatoid arthritis (by history). (AR 513-14). On July 11, 2014, Plaintiff reported that she deals with stress by playing video games and watching movies. (AR 572).

In a September 9, 2014 report for the disability determination bureau Dan L. Boen, Ph.D wrote that Plaintiff is nervous in social situations, has anxiety, and feels that she needs to check and recheck things she needs to do each day. (AR 610). Dr. Boen opined in his medical source statement that Plaintiff can understand and remember job requirements, can concentrate and stay on task at work, and can get along with coworkers and supervisors. (AR 612). On March 2, 2015, Dr. Joelle J. Larsen gave weight to Dr. Boen's medical source statement and found that Plaintiff's psychological difficulties are not significantly limiting and that her impairment is not severe. (AR 141).

Plaintiff reports that she was diagnosed with juvenile idiopathic arthritis at the age of six. (AR 728). In 2013, Plaintiff reported that her pain, inflammation, swelling, and stiffness began to increase in frequency and severity. (AR 527, 561). In May 2015, Plaintiff was assessed as having osteoarthritis in her knees, facet arthropathy in her cervical and lumbar spine, bilateral sacroiliitis, and chronic pain syndrome. (AR 716, 721). In the treatment records since 2013, Plaintiff complained

of generalized fatigue and pain, stiffness, inflammation, and swelling in her hands, wrists, ankles, hips, knees, neck, and shoulders. (AR 527, 547, 561, 615, 620, 680, 682, 718, 728, 741, 751, 757, 762, 818). On February 27, 2015, Dr. M. Ruiz, the state agency consultative reviewer, opined that Plaintiff's physical impairments were not severe. (AR 139). In May 2015, Plaintiff completed physical therapy for her pain. (AR 718-722). On February 26, 2016, it was noted that in August 2015, Plaintiff was doing very well on her new medications and that Plaintiff reported that she continued to do well with no flare ups; Plaintiff reported that her pain level was 1 on a scale of 0-10 and that her fatigue level was 2 on a scale of 0-10. (AR 741).

At the hearing, Plaintiff testified that she receives vocational rehabilitation services through her school. (AR 56). A "tech service person" from the school comes to her house to teach her "different programs to use" to help with school. (AR 75). When asked what a typical day is like, Plaintiff testified that, because she takes online classes, she gets up, does her homework, then "maybe play[s] a game, cook[s] something . . . to eat, and watch[es] a move." (AR 79). Plaintiff testified that she does her class work for an hour or two at a time. (AR 87). When asked by the ALJ how long she would rest if she needed after keyboarding for fifteen minutes, Plaintiff testified that she would rest for five or ten minutes. (AR 87). At the time of the hearing, Plaintiff had not earned her driver's license and had been driving with a permit for five or six months. (AR 57).

Plaintiff testified that she stopped working at Wal-Mart in 2014 because she "started getting pain and swelling in her feet and ankles and hands, and [she] just couldn't stand for as long without it hurting [her] back." (AR 60). Plaintiff testified that she "can walk about three, four hours" while out and about with her mother but needs to take breaks to do so. (AR 68-69). Plaintiff explained that standing "is worse" and she can only stand for "about 10 to 15 minutes." (AR 69). As for sitting,

Plaintiff testified that she can sit "for a period of time" but that she gets up to do something else. (AR 69). When asked what happens if she sits too long, she testified that "once in a while" her back will hurt but "mainly" she gets sleepy if she has had her medication. *Id.* She testified that pushing the vacuum hurts her hands, that she can only carry ten to fifteen pounds, that she can hold a water bottle, that she can write for fifteen to thirty minutes, and that she has trouble opening twist caps. (AR 70). At the library where she volunteers, Plaintiff started out by labeling books, then cleaned CDs, and now cleans DVDs to keep them working. (AR 62). Plaintiff testified that, at home, she vacuums, empties the dishwasher, feeds the pets, and lets the dog out, but that her mother leaves her notes to remind her to do so. (AR 73). She further testified that her mother helps her keep track of her appointments and manage her money. (AR 75, 82).

Plaintiff's mother testified that she keeps track of Plaintiff's medication because otherwise Plaintiff would forget, that Plaintiff has "always needed prompt[ing]" to remind her of things, and that Plaintiff's mother uses a "note system" to remind Plaintiff of what needs to be done each day. (AR 91, 92). Plaintiff's mother testified that Plaintiff can "only really handle a couple of hours of shopping or going out" before "she's done, she's tired." (AR 93). After that, Plaintiff puts on a movie for her "chill down time" for a few hours and that Plaintiff then has "no desire to go out and do anything else the rest of the day." (AR 93-94). Plaintiff's mother testified that Plaintiff enjoys cooking, but that her mother has to be present and direct Plaintiff as to each step. (AR 95).

## ANALYSIS

In this appeal, Plaintiff argues that (1) the ALJ's residual functional capacity assessment is incomplete because the ALJ failed to account for Plaintiff's limitations and allegations that the ALJ credited and (2) the ALJ's residual functional capacity assessment is unsupported by substantial

evidence because the ALJ "played doctor" and did not explain the basis for the residual functional capacity.

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). With this standard in mind, the Court addresses each argument in turn.

**A. Failure to Incorporate Credited Allegations**

Plaintiff argues that the ALJ's RFC assessment for a limited range of light work is incomplete because the ALJ failed to account for mental and physical limitations established by the record that the ALJ credited. (ECF 17, p. 7).

*1.    Mental Limitations*

Plaintiff contends that the ALJ failed to incorporate limitations in the RFC to account for her need for redirection and supervision and for her moderate limitations in concentration, persistence, and pace. Plaintiff notes that the ALJ recognized that these limitations are supported by the evidence of record.

In support, Plaintiff cites evidence that she needs repeated and continuing reminders and prompts to complete a task. For example, Plaintiff cites the Adult Function Reports that she completed on February 28, 2010, and August 2, 2014, and that her mother completed on August 12, 2014, on which it is noted that Plaintiff cannot follow spoken instructions well or that she follows them "okay" and needs "to be reminded [of that] at a certain point." (ECF 17, p. 7) (citing (AR 282, 310, 320)). However, the Court notes that the same Adult Function Reports provide that Plaintiff "can follow written instructions very well" or "fine." (AR 282, 310, 320).

Plaintiff then cites evidence that her mother leaves Plaintiff notes about what chores need to be done each day and that Plaintiff's mother supervises Plaintiff when she does laundry and cooks. (ECF 17, p. 7) (citing 92, 97, 279, 307, 317, 320, 489). Plaintiff notes that her mother testified that Plaintiff has "always needed prompt[ing]" for school work and medication, (AR 91, 279); that her mother checks Plaintiff's outfits to make sure they are clean, coordinated, and appropriate, (AR 317, 488); that her mother manages Plaintiff's money, (AR 82, 280, 308, 318-19);

that her mother prompts Plaintiff to move during the day for exercise and makes sure that Plaintiff

is awake and out of bed in the morning, (AR 92, 94); and that Plaintiff "always needs guidance" (AR

322).

Plaintiff notes that, after examining Plaintiff in 2011 for Indiana's Bureau of Developmental

Disability Services, C. Newman-Aumiller, M.A. and Marilyn Nathan, Ph.D. recommended that

Plaintiff be provided with visual demonstration of tasks with "hands-on" reinforcement, audio cues,

and the opportunity for repeated learning experiences." (AR 514). In 2011, Plaintiff worked with

a "trainer" from Easter Seals to learn job skills. (AR 518). The Court notes that these records are

from a time period years before her alleged onset date in 2014 and during a time when she was

performing a semi-skilled job at Wal-mart at the substantial gainful activity level since 2009.

Plaintiff also notes that, in 2016, when Plaintiff was twenty-seven years old, Plaintiff was

provided a driver's education tutor as part of her vocational rehabilitation program, and the tutor

planned to work with Plaintiff twice each week to reinforce and review the concepts for the test. (AR

359). The tutor recognized Plaintiff's need for repetition, explaining that Plaintiff could take the test

every day until she passes. *Id.* The vocational rehabilitation counselors also explained that Plaintiff

"will require a position that is highly structured and has a rigid routine." (AR 378). The Court notes

that the counselors in the same record indicated that her vocational goal of working in a library was

appropriate for her level of functioning. *Id*.

Plaintiff also cites evidence that she struggles to maintain concentration. Plaintiff notes that

her supervisor at Wal-mart noted that Plaintiff "occasionally" and "sometimes gets distracted." (AR

287). However, in the same report but not cited by Plaintiff, the same supervisor commented that

Plaintiff was maintaining a work routine, was able to concentrate on assigned work and take normal

breaks, was able to understand direction, was able to complete assigned work, was able to adapt to changes in the work setting, and did not require any excess supervision not given to other employees. (AR 286-87). Plaintiff notes that, when she returned to community college in 2016 to pursue her library certificate, she would work on her online class work for "an hour or two" and then would take a break, which could include playing video games, cook something to eat, and watching a movie. (AR 79, 87). Plaintiff notes that she likes to use a rice cooker and that in the past she has gotten distracted while cooking and "let a pot boil down to nothing." (AR 81). Plaintiff notes that the ALJ found that Plaintiff has moderate limitations in concentration, persistence, or pace. *See* (AR 34).

In the RFC, the ALJ included the following mental limitations: "Mentally, the claimant cannot have [any] sudden or unpredictable workplace changes in terms of work tools, work processes, or work settings, and if there are work place changes, introduction of these [ ] should be gradual. In addition, the work activity cannot involve requirements to satisfy production quotas or involve assembly line pace work." (AR 36).

Plaintiff argues that, despite finding that the evidence supports Plaintiff's allegations of a need for redirection and supervision and that she has moderate limitations in concentration, the ALJ failed to account for these limitations in the mental RFC. More specifically, Plaintiff argues that the limitations in the RFC account only for stress Plaintiff might experience in the workplace and that the ALJ did not include any limitations to account for her need for structure, for reinforcement and for moderate limitations in concentration, persistence, or pace. (AR 33).

Plaintiff misreads the ALJ's decision and fails to note that, in considering the mental impairment listings at step three and the State agency reviewing psychologist's opinion, the ALJ

explicitly accounts for both the limitation to "fairly-low stress type of work (i.e. non-complex or highly details[sic] job tasks)" and a "moderate limitation in the ability to maintain concentration, persistence, or pace." (AR 33). Notably, in limiting Plaintiff to "fairly-low stress type of work," the ALJ specified that Plaintiff would be limited to work that was not complex or highly detailed. *Id*. Then, having made both those findings, the ALJ limited Plaintiff's work "to low stress not involving much change in the workplace in terms of processes, tools and setting," and, the ALJ noted that, "if any change would occur," Plaintiff would need "gradual introduction of change." *Id*. The ALJ then "further preclude[d] production type jobs that tend to increase workplace stressors." *Id*. The ALJ explicitly clarified that these limitations would be "set forth in greater detail within the assigned residual functional capacity." *Id*.

Thus, the ALJ considered Plaintiff's limitations related both to stress and as to moderate limitations in concentration, persistence, and pace and incorporated limitations in the RFC for each. At the hearing, the ALJ asked the vocational expert what the requirements for on-task behavior are in a competitive work setting, in the context of jobs at the unskilled level, to which the vocational expert responded that the worker should be able to stay on task about 90% of the work day, exclusive of regular breaks. (AR 100). Throughout his decision, the ALJ noted Plaintiff's five-year history of working in a semi-skilled position at Wal-mart, which was despite the supervisor's observation that Plaintiff was sometimes distracted. Plaintiff does not identify any evidence of record that she could not maintain the requisite attention to stay on task 90% of the work day, exclusive of regular breaks. In addition, Plaintiff's attorney asked the vocational expert whether an employee in unskilled work is expected to know the job and not go through training again once the job is learned. (AR 101). The vocational expert testified that, in unskilled work, the expectation is

that the work task is shown to the employee and after that "brief demonstration or up to 30 days," the employee should be able to perform the task independently without further instructions, redirection, or teaching. *Id*. Plaintiff identifies no evidence in the record that she would not be able to learn unskilled work within 30 days and then do that work going forward. As the ALJ repeatedly noted, Plaintiff performed semi-skilled work for five years, which is consistent with and supports the mental limitations in the RFC.

In addition, the ALJ incorporated a limitation in the RFC for the gradual introduction of any change in the workplace setting, which accommodates Plaintiff's moderate difficulties with concentration. To the extent Plaintiff has moderate difficulties with persistence or pace, the ALJ accommodated those difficulties with the limitation to no production quotas or assembly line pace work. Plaintiff's argument that these limitations were only meant to account for or reduce "stress" is not well taken in light of all the evidence of record and the ALJ's thorough questioning of the vocational expert.[1]

Plaintiff does not identify any evidence of record that supports greater mental limitations than those incorporated in the RFC. And, in some instances, such as the Wal-mart supervisor's questionnaire answers, *see* (AR 286-88), Plaintiff identifies evidence that, when considered as a whole, constitutes substantial evidence in support of the ALJ's decision. The ALJ's mental RFC determination incorporates Plaintiff's limitations of record and is supported by substantial evidence.

---

[1] In her brief, Plaintiff hypothesizes that the ALJ distinguished between the issues of stress reduction and concentration in posing questions to the vocational expert because the ALJ's hypothetical questions first addressed stress-reduction limitations, (AR 97-99), and then the ALJ asked a separate question about "requirements for on-task behavior in a competitive work setting" in light of the testimony that Plaintiff had difficulty "staying on task, [] attention problems, [and] distractibility." (AR 100). Plaintiff reasons that, if the ALJ intended for the stress-reduction limitations to account for Plaintiff's distractibility, attention problems, and difficulty staying on task, he would not have asked the follow-up questions about on-task requirements. When read as a whole, the line of questioning does not support this inference.

2.    *Physical Limitations*

Plaintiff argues that the ALJ ignored physical limitations caused by Plaintiff's rheumatoid arthritis. In support, Plaintiff notes her hearing testimony that she would rest for five or ten minutes when asked by the ALJ how long she would rest if needed after keyboarding for fifteen minutes. (AR 87). Plaintiff notes that she reported during an adaptive technology evaluation that she is not good at taking notes, that she sometimes is "unable to keep up with the professor," that she has difficulty if she writes for an extended period of time, and that her rheumatoid arthritis affects her fingers. (AR 810). The Court notes that, when asked during the same evaluation, Plaintiff denied any difficulty with the physical act of typing. *Id*.

Plaintiff then notes generally, without discussing any of the cited records, that she repeatedly reported joint pain and fatigue to her doctors. (AR 527, 547, 561, 615, 620, 680, 682, 718, 728, 741, 751, 757, 762, 818). The Court notes that these pages of the administrative record are contained within Exhibits 11F, 13F, 17F, 25F, 28F, 29F, 31F, and 36F. The ALJ cited and discussed evidence from Exhibits 17F, 25F, 31F, and 36F; Exhibits 11F and 13F are from the time period before Plaintiff's alleged onset date and when Plaintiff was working at the substantial gainful activity level; Exhibit 28F is a June 1, 2015 record for treatment for neck and back pain that Plaintiff rated as a two on a scale of one to ten; and Exhibit 29F is May 2015 records for physical therapy to treat her pain. Plaintiff then notes that her mother testified that Plaintiff can only shop for a couple of hours before she is "done, she's tired." (AR 93). And, Plaintiff cites the vocational rehabilitation counselor's 2016 note that Plaintiff can "work for about 2-3 hours per day." (AR 378). The Court notes that Plaintiff testified that she can walk three to four hours. (AR 68-69).

Plaintiff argues that, while the ALJ did not contest this evidence, he failed to account for the restrictions that the evidence requires. Specifically, Plaintiff argues that the RFC limitations of a sit-stand option and a restriction to "frequent" use of her hands do not account for her limitations. (AR 36). The Court considers each in turn.

a.     Sit-stand option and sleepiness

In the RFC, the ALJ incorporated a "need for an option to sit/stand, which allows for the following- The opportunity to alternate between sitting and standing up to every 30 minutes, if needed, without the positional change rendering the individual off task." (AR 36). Plaintiff argues that this sit-stand option does not address Plaintiff's fatigue and limited endurance over longer periods of time and that the sit-stand option only addresses her lower back pain. (AR 17, p. 10). As an initial matter, the Court notes that Plaintiff does *not* dispute that the limitation to light exertion work with the allowance of a sit-stand option every thirty minutes sufficiently accounts for any pain Plaintiff may experience due to her rheumatoid arthritis, as possibly worsened by her mild to moderate obesity. *See* (AR 38-39). In his decision, the ALJ carefully reviewed the treatment records for rheumatoid arthritis and Plaintiff's allegations regarding her rheumatoid arthritis symptoms; Plaintiff does not dispute the ALJ's recitation and understanding of this evidence and the testimony. *See* (AR 37, 38-39).

As to Plaintiff's argument that the sit-stand option does not address Plaintiff's fatigue and limited endurance, the ALJ explicitly addresses this concern, which Plaintiff fails to acknowledge or challenge. The ALJ noted that Plaintiff reported an ability to walk about three to four hours without the need for any assistive device but that Plaintiff requires breaks, which the ALJ found consistent with Plaintiff's capacity for walking in the record. (AR 37). The ALJ then noted that

Plaintiff "is able to stand for about 10-15 minutes, sit for a period of time before getting up to do something else, as sitting for too long sometimes hurts her back, but primarily sitting for too long *causes her to become sleepy*, which sleepiness, she relates to Methotrexate. While the claimant might be experiencing some medication side effects of sleepiness with prolonged sitting, such does not appear to be a significant limitation, as the claimant denies side effects to Dr. Reddy." (AR 37) (emphasis added). The ALJ went on to explain that "the ALJ accommodates such symptoms of sleepiness with prolonged sitting and to complaints in standing and sitting by acknowledging [the] need for an option to sit and stand." *Id*. In other words, the ALJ incorporated the sit-stand option to specifically accommodate Plaintiff's sleepiness. Plaintiff's argument is not well taken and remand is not required.

b.    Use of hands

In the RFC, the ALJ incorporated a limitation to "only frequent bilateral handling and fingering with no forceful grasping/gripping of the hands." (AR 36). Plaintiff notes that "frequent" is defined as occurring from one-third to two-thirds of the time or up to a total of 6 hours in an 8-hour work day. SSR 83-10, 1983 WL 31251, at *6. And, Plaintiff contends that the three jobs cited by the vocational expert in response to the ALJ's controlling hypothetical question (router, mail clerk, and power screwdriver operator), (AR 98-99), require the use of the hands at what she describes as the "higher end of the 'frequent' range." (ECF 17, p. 11) (citing https://occupationalinfo.org/22/222587038.html; https://occupationalinfo.org/20/209687026.html; https://occupationalinfo.org/69/699685026.html).

Plaintiff argues that these jobs are inconsistent with her testimony that she would rest for five to ten minutes after keyboarding for 15 minutes, if needed, and that the RFC does not account for

needed breaks from typing, which would take her off-task too often to satisfy the work requirements testified to by the vocational expert. (ECF 17, p. 11) (citing (AR 37, 87, 100)). First, Plaintiff herself did not offer testimony that she needs a break when typing or "using" her hands. *See* (ECF 17, p. 11) (asserting in her brief that she "must rest her hands for five to ten minutes after *using* them for 30 minutes."). Rather at the hearing, the ALJ asked, "Let's say that you were keyboarding for 15 minutes and you needed a rest. How long would you rest?" (AR 87). To this, Plaintiff responded, "Five, ten minutes. I would go up and do something, or if I get distracted it would be longer." (AR 87). Second, in her brief, Plaintiff inaccurately characterizes this questioning as supporting a limitation in "using" hands when the question was specific about typing. Third, in 2016, when asked during an adaptive technology evaluation, Plaintiff denied any difficulty with the physical act of typing, although she reported hand fatigue taking notes in class. Finally, none of the listed jobs appear to require typing or keyboarding.

In addition, Plaintiff fails to acknowledge the ALJ's consideration of not only her subjective allegations regarding hand use but also the medical evidence of record regarding Plaintiff's rheumatoid arthritis. *See* (AR 38-39). Moreover, Plaintiff's brief does not acknowledge these records, argue that the records do not support the RFC, or argue that the records support greater limitations than imposed by the ALJ in the RFC. First, the ALJ noted Plaintiff's history of rheumatoid arthritis and her treatment for rheumatoid arthritis at the Cleveland Clinic while she was still engaging in substantial gainful activity. The ALJ noted that Dr. Reddy's treatment records show that clinical examination findings were essentially normal and unremarkable for any objective deficit. (AR 38) (citing Ex. 31F). Nevertheless, the ALJ recognized that Dr. Reddy's treatment records indicated that, with medication therapy, Plaintiff's rheumatoid arthritis complaints and

symptoms improved and seemed to be under good control. *Id.* Plaintiff does not dispute the ALJ's understanding of the record. The ALJ then reasoned that Plaintiff's symptoms had improved sufficiently to allow her to seek further educational pursuits. *Id.* Last, the ALJ noted that examinations by Plaintiff's primary care physician, Dr. Brett Kueber, seemed to show full painless range of motion in all muscle groups and joints, which the ALJ commented comports with improvement since Plaintiff's alleged onset date. *Id.* Again, Plaintiff does not acknowledge or dispute the ALJ's analysis of this evidence of record.

Finally, the ALJ tied this evidence of record into the RFC determination. The ALJ found that, "with respect to alleged increase of problems with RA resulting in some slight hand limitations along with some arthritis problems with the hands," Plaintiff was reasonably limited as to the "forceful use of the hands for gripping/grasping bilateral handling/fingering to a frequent vs. a constant basis." (AR 39). The ALJ's inclusion of a limitation to frequent handling and fingering with no forceful grasping/gripping of the hands is supported by substantial evidence of record, and Plaintiff has not identified any evidence that supports greater restrictions. Remand is not required.

## B. Substantial Evidence

Plaintiff next contends that the RFC is not supported by substantial evidence because (1) the ALJ played doctor by rejecting all medical source opinions and making independent medical findings and (2) the ALJ failed to explain what evidence supported the RFC. The ALJ did not err in either regard.

### 1.    *Medical Source Opinions*

Plaintiff argues that the ALJ succumbed to the temptation to play doctor and made his own independent medical findings when the ALJ rejected the opinion of all the medical sources in the

record. (AR 33, 38). Plaintiff argues that, as a result, the ALJ created an "evidentiary deficit" and used his own lay opinions to fill evidentiary gaps in the record. (ECF 17, p. 12) (citing *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010); *Rohan v. Chater*, 98 F.3d 966, 976 (7th Cir. 1996); *Wilder v. Chater*, 64 F.3d 335, 338 (7th Cir. 1995)).

Plaintiff misreads the ALJ's decision and ignores the ALJ's analysis of the opinion evidence. In this case, the ALJ rejected the reviewing agency doctors' opinions as to Plaintiff's RFC, not as to the nature or severity of Plaintiff's medical conditions. The determination of the RFC is an administrative decision, not a medical one, and the ALJ is not required to rely solely on a medical opinion to determine the RFC. 20 C.F.R. §§ 404.1546(c); 416.946(c); *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014); *Simila v. Astrue*, 573 F.3d 503, 514-15 (7th Cir. 2009); *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995); *Diaz v. Chater*, 55 F.3d 300, 306 n. 2 (7th Cir. 1995); *see also Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). For both her mental and physical impairments, the ALJ found Plaintiff to be more limited than opined by the state agency reviewing doctors.

First, the ALJ considered the March 2015 opinions of the state agency reviewing psychologists. (AR 33) (citing Ex. 3A, 8A). The ALJ noted that the reviewing psychologists determined that Plaintiff did not experience any severe mental status deficits, had no limitations in daily activities or in social functioning, and had no more than mild limitation in maintaining concentration, persistence, or pace. *Id*. The ALJ recognized that these opinions were based on Plaintiff's longstanding autism that the reviewing psychologists did not believe impacted Plaintiff's work in light of Plaintiff's history of semi-skilled work that ended due to physical limitations. *Id*. The ALJ further recognized that these opinions were based on the September 2014 consultative exam in which the psychologist, Dr. Boen, reported to unremarkable clinical findings and

observations consistent with the ability to understand, remember, concentrate and remain on job tasks, and socialize. *Id.* Finally, the ALJ noted that the opinions were also based on daily reports of self-care, doing laundry, playing video games, reading, cooking, managing money and socializing, and the ability to follow written better than verbal instructions. *Id*. Then, the ALJ found that, while the reviewing psychologists' opinions were understandable in light of that evidence, the testimony before the ALJ "reasonably appears to support greater functional limitation then that which can be assessed by review of the records and onetime exam." *Id*. Based on the testimony in light of the medical evidence, the ALJ found that further restrictions for low-stress work and moderate limitations in concentration, persistence, and pace are warranted. (AR 33).

Plaintiff does not acknowledge or discuss the ALJ's analysis of the state agency reviewing psychologists' opinions or the additional basis, namely Plaintiff's testimony, on which the ALJ formulated the mental RFC. Moreover, Plaintiff does not identify any medical evidence of record or testimony that supports greater mental limitations than those imposed by the ALJ in the RFC. The ALJ properly based the mental RFC on the evidence and testimony of record and explained how both translated into the RFC. *See Simila*, 573 F.3d at 514-15; 20 C.F.R. §§ 404.1546(c); 416.946(c).

Second, as to the opinion evidence regarding Plaintiff's physical limitations, the ALJ noted that in March 2015, the state agency reviewing physicians determined that the overall evidence did not support a severe limitation in functioning. (AR 38). The ALJ recognized that, in offering that opinion, the reviewing physicians noted normal clinical findings in the evidence; and, the ALJ noted that the "record appears to somewhat support" that conclusion. (AR 38) (citing Exs. 3A, p. 4, 15F, 17F, 18F, 19F). However, the ALJ then credited Plaintiff's testimony that her rheumatoid arthritis symptoms and pain were sufficient to prompt her to quit her semi-skilled light exertion job at Wal-

mart that she had successfully performed for five years. *Id.* As a result, in light of the longstanding diagnosis of rheumatoid arthritis and the reported increase of symptoms in May 2014, the ALJ found that Plaintiff's physical limitations were greater than the non-severe determination found by the state agency reviewing physicians. Then, the ALJ conducted the analysis of Plaintiff's rheumatoid arthritis outlined above in Part A.2.b.

As with the mental limitations, Plaintiff does not acknowledge or discuss this analysis by the ALJ of the state agency reviewing physicians' opinions or the basis on which the ALJ found Plaintiff's physical impairments more limiting than the reviewing physicians. Likewise, Plaintiff does not identify any medical evidence of record or testimony that supports greater physical limitations than those imposed by the ALJ in the RFC. The ALJ properly based the physical RFC on the medical evidence and testimony of record.

Therefore, the ALJ did not err in considering the opinion evidence of record, and the analysis as to each is supported by substantial evidence. Remand is not warranted on this issue.

## 2. *Accurate and Logical Bridge*

Finally, in two sentences, Plaintiff argues that the ALJ fails "to explain what evidence supported his conclusion and how," pointing only to the argument made earlier in her brief that the ALJ credited Plaintiff' allegations but then failed to account for all the limitations without "explanation or elucidation." (ECF 17, p. 12-13). As set forth above, in determining Plaintiff's RFC, the ALJ thoroughly discussed the evidence of record related to each of Plaintiff's impairments and the corresponding limitations, building an "accurate and logical bridge from the evidence to his conclusion." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) ("The ALJ must adequately

discuss the issue and must build an 'accurate and logical bridge from the evidence to his conclusion.'" (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003))).

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the relief sought in the Social Security Opening Brief of Plaintiff [DE 17]. The Court **DIRECTS** the Clerk of Court to **ENTER JUDGMENT** in favor of Defendant and against Plaintiff.

So ORDERED this 2nd day of August, 2018.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT